UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

JILL JONES-SODERMAN,

        Plaintiff,                        CV 08-4716 (SJF) (LB)

     -against-                     NOTICE OF MOTION TO DISMISS
                                          PURSUANT TO RULES 12(b)(1)
EXECUTIVE SECRETARY OF THE STATE     AND 12(b)(6) OF THE FEDERAL
BOARD FOR SOCIAL WORK OF THE        RULES OF CIVIL PROCEDURE
UNIVERSITY OF THE STATE OF NEW
YORK, et al.,

        Defendants.

-----------------------------------------------------x

TO:    Jill Jones-Soderman
       10 Cornelison Avenue
       Nyack, New York 10960-4644
           [plaintiff *pro se*; by mail, and by e-mail to:
           Jill@TheOpenMind.us]

     **PLEASE TAKE NOTICE** that defendants (except Morris Schrajer), by their attorney,

Andrew M. Cuomo, Attorney General of the State of New York (Ralph Pernick, Assistant

Attorney General, of counsel) move to dismiss all claims asserted against them in this action, and

to dismiss the action, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure, and for such other and further relief as this Court may deem just and proper.

     **PLEASE TAKE FURTHER NOTICE** that this motion is based upon: [1] plaintiff's

amended complaint, filed January 30, 2009 [docket entry # 7]; [2] the documents attached to or

referred to in such amended complaint; [3] the attached memorandum of law that follows page 9

of this notice of motion, and the statement of charges attached to the memorandum of law; and

[5] the rules and notices attached as pages 3-9 to this notice of motion.

**PLEASE TAKE FURTHER NOTICE that in light of the fact that you have chosen to represent yourself without an attorney**, the following materials are attached to the service copy of this notice of motion, and are also attached to the courtesy copy being furnished to the Honorable Sandra J. Feuerstein, United States District Judge assigned to this action. (These materials are omitted from the original notice of motion, which will be filed electronically with the Court):

a. Local Civil Rule 12.1 notice to pro se litigants (attached as page 3);

b. Rules 12 and 56 of the Federal Rules of Civil Procedure (attached as pages 4-6); and

c. the Individual Motion Practices of Judge Feuerstein, downloaded from the Court's web-site (www.nyed.uscourts.gov) on February 17, 2009 (attached as pages 7-9).

**Your response to this motion should take these materials into account**, and should be served upon the undersigned – **not filed with the Court**; see § 4(E) of Judge Feuerstein's Individual Rules – no later than March 13, 2009.

<div style="margin-left: 40%;">

Andrew M. Cuomo, Attorney General of the State
of New York
Attorney for defendants (except Morris Schrajer)

By: _Ralph Pernick_ _____

Ralph Pernick, Assistant Attorney General
200 Old Country Road – Suite 460
Mineola, New York 11501-4241
516/ 248-3312 [direct #]

</div>

Dated: February 17, 2009

-2-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JILL JONES-SODERMAN,

               Plaintiff,

                                                 CV 08-4716 (SJF) (LB)

    -against-

EXECUTIVE SECRETARY OF THE STATE BOARD
      FOR SOCIAL WORK OF THE UNIVERSITY OF THE
      STATE OF NEW YORK,
MORRIS SCHRAGER, STATE BOARD OF SOCIAL
      WORK, STATE OF NEW YORK,                  **DEFENDANTS'**
      OFFICE OF PROFESSIONAL DISCIPLINE,       **MEMORANDUM OF**
      NEW YORK STATE EDUCATION DEPT.,        **LAW IN SUPPORT OF**
GEORGE DING, DIR. OF PROSECUTIONS,            **MOTION TO DISMISS**
WAYNE KEYES, ESQ. PROSECUTING ATTNY.,      **THIS ACTION, WITHOUT**
      OFFICE OF PROFESSIONAL DISCIPLINE,       **LEAVE TO REPLEAD** [1]
      N.Y.S. ED. DEPT.,
LOUIS J. CATONE, PROFESSIONAL CONDUCT OFFICER,
      N.Y.S. ED. DEPT. OFFICE OF PROFESSIONAL DISCIPLINE,
COMMISSIONER OF EDUCATION OF THE STATE OF
      NEW YORK,
ASSISTANT COMMISSIONER OF EDUCATION FOR THE STATE
      EDUCATION DEPARTMENT OF THE STATE OF NEW YORK,
THE STATE EDUCATION DEPARTMENT,
THE UNIVERSITY OF THE STATE OF NEW YORK,
THE NEW YORK STATE BOARD OF REGENTS,

               Defendants.
-------------------------------------------------------------------X

      This memorandum of law is respectfully submitted on behalf of the defendants, in

support of their motion to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the

---

[1] All references to "defendants" do not include Morris Schrajer (plaintiff misspells his name),
who as of this date has not requested representation from the Office of the Attorney General. The docket
sheet does not reflect that he has been served with process. The docket sheet does, however, reflect that
the Court (Bloom, U.S.M.J.) issued an order on December 4, 2008 [docket entry # 4], stating that "if
service is not made upon the defendants by March 12, 2009 or plaintiff fails to show good cause why
such service has not been effected, it will be recommended that the Court dismiss this action without
prejudice."

Federal Rules of Civil Procedure. (In light of plaintiff's *pro se* status, copies of all cited provisions of the Federal Rules of Civil Procedure, and judicial decisions that are unreported or reported only on computerized data-bases for which a fee is charged, are being served on her with this motion.)

### 1. Background

The *pro se* plaintiff is the respondent in a pending State disciplinary proceeding, commenced pursuant to New York Education Law § 6510. By this action, she seeks to have this Court prevent or delay the proceeding against her from continuing, while she continues to practice as a licensed clinical social worker. [2]

Under New York Education Law §§ 7702(3)(a) and 7702(3)(b), "[o]nly a person licensed or exempt under this article shall practice 'licensed clinical social work' as defined in subdivision two of section seventy-seven hundred one of this article. . . . [and o]nly a person licensed pursuant to subdivision two of section seventy-seven hundred four of this article shall use the title 'licensed clinical social worker' or the designation 'LCSW.' "

Where a New York-licensed professional – such as a social worker – is suspected of professional misconduct, penalties range from censure and reprimand to license revocation [Education Law § 6511].

### 2. The Defendants

The amended complaint's caption names eleven defendants (four State officials identified by name and by title; three more State officials identified by titles only; and four State entities).

---

[2] Plaintiff added the initials "LCSW" (meaning Licensed Certified Social Worker) after her signature on the amended complaint, and her Rule 7.1 Statement attached to her original complaint states that she is "a social worker in private practice."

However, plaintiff refers to "defendant" in the singular when describing the remedies she seeks in this action [page 10; all references are to plaintiff's *Amended* Complaint [docket entry # 7]. [3]

A substantial portion of the text of the complaint refers to the alleged misdeeds of two defendants: Wayne Keyes, who is prosecuting the administrative disciplinary proceeding against plaintiff [¶¶ 5, 24-28, 36], and "'John Doe' Shrager," who is alleged to have recommended a psychological evaluation of the plaintiff [¶¶ 6, 27, 32-35], and who plaintiff also alleges to have prosecuted plaintiff [¶¶ 34-35].

### 3.   Factual Background

Plaintiff was issued a license to practice social work in the State of New York in 1972. Prior to the commencement of this action in November 2008, an informal settlement conference with respect to a possible disciplinary proceeding against plaintiff was conducted in September 2008 [¶ 27], at which plaintiff and defendant Keyes and Schrajer were present. (This conference

---

[3] The four officials are Morris Schrajer, Wayne Keyes, George Ding, and Louis P. Catone. (Plaintiff misspells Schrajer's and Catone's names.) However, the amended complaint's text does not allege what Ding and Catone supposedly did, and contains no reference to them other than in the Statement of the Case, which refers to all of the defendants without distinguishing among any of them [¶ 1].

The three defendants identified by their titles only are: [a] the Executive Secretary of the State Board of Social Work of the University of the State of New York; [b] the Commissioner of Education of the State of New York; and [c] the Assistant Commissioner for the State Education Department of the State of New York. The amended complaint contains no allegations as to the Assistant Commissioner for the State Education Department of the State of New York. The only allegations against the Executive Secretary of the State Board of Social Work of the University of the State of New York, and the Commissioner of Education of the State of New York are that they "failed to supervise, inspect, review and manage its subordinate defendant units" [¶¶ 3-4].

The four State entity defendants are: [a] the Office of Professional Discipline, New York State Education Department; [b] the State Education Department; [c] the University of the State of New York; and [d] the New York State Board of Regents. It is impossible to discern any specific allegations as to what any of these defendants – as opposed to the remaining defendants – supposedly did.

-3-

did not result in a settlement.) After plaintiff commenced this action in November 2008, she was served with a Statement of Charges in December 2008, a copy of which is attached. [4] In the Statement of Charges, SED's OPD charged plaintiff with having filed documents with SED in which she falsely denied having been the subject of licensing disciplinary proceedings, and failed to disclose, that: [a] she had consented to a five-year suspension in 2003 from practicing social work in New Jersey; and [b] her license to practice social work in Arizona was revoked in 2005 for her failure to disclose the New Jersey suspension in her Arizona application (as well as in applications to licensing authorities in Texas and in New York), and for her failure to disclose a malpractice practice action against her. A hearing with respect to the Statement of Charges has been scheduled for February 24, 2009.

### 4.    The Action Should Be Dismissed, Without Leave To Replead

The amended complaint ignores a number of long-settled legal principles, and cannot be saved by allowing plaintiff to file a second amended complaint.

### A.    Eleventh Amendment Immunity and Sovereign Immunity

Four defendants are entities of the State of New York:  the State Education Department ("SED"), the University of the State of New York, the New York State Board of Regents, and the Office of Professional Discipline ("OPD"). [5]   Accordingly, settled legal principles  – the

---

[4] The Statement of Charges was signed by defendant Keyes as OPD Prosecuting Attorney, and identifies defendants Catone and Ding as Professional Conduct Officer and Director of Prosecutions respectively.

[5] SED is a State entity [Education Law § 101:  "There shall continue to be in the state government an education department.  The department is charged with the general management and supervision of all public schools and all of the educational work of the state, including the operations of The University of the State of New York and the exercise of all the functions of the education

Eleventh Amendment to the United States Constitution, and the related doctrine of sovereign

immunity – preclude them from being sued in a federal district court. *See* *McGinty v. New York*,

251 F.3d 84, 95-100 (2d Cir. 2001). The Second Circuit has recently summarized the principle

as follows (*Gorton v. Gettel*, – F.3d – , Dkt. No. 07-3190-cv [2d Cir. Jan. 28, 2009] [6]):

> "[A]s a general rule, state governments may not be sued in federal court unless
> they have waived their Eleventh Amendment immunity." Woods v. Rondout
> Valley Cent. School Dist. Bd. of Educ., 466 F.3d 3432, 436 (2d Cir. 2006) (citing
> Lapides v. Bd. of Regents, 535 U.S. 613, 618-619 (2002)). Eleventh Amendment
> immunity extends to "state agents and state instrumentalities that are, effectively,
> arms of a state." Id. (internal quotation marks and citations omitted).

---

department, of The University of the State of New York, of the regents of the university and of the commissioner of education and the performance of all their powers and duties, . . ."].

The University of the State of New York is also a State entity [Education Law §§ 201 and 202. *See also* § 214: "The institutions of the university shall include all   secondary and higher educational institutions which are now or may hereafter be incorporated in this state, and such other libraries, museums, institutions, schools, organizations and agencies for education as may be admitted to or incorporated by the university."]

The New York Board of Regents is also a State entity [Education Law § 101: "The regents of The University of the State of New York shall continue to constitute a board  and The University of the State of New York, which was continued under such name by section two of article eleven of the constitution, shall continue to be governed and all its corporate powers to be exercised by such board."]

Education Law § 6504 assigns responsibility for regulation of the professions, such as social work, as follows: "Admission to the practice of the professions (licensing) and regulation of such practice shall be supervised by the board of regents (section sixty-five hundred six) and administered by the education department (section sixty-five hundred seven), assisted by a state board for each profession (section sixty-five hundred eight)."

Pursuant to Education Law § 6507(4)(h), OPD is the State entity that investigates and prosecutes allegations of professional misconduct in all of the licensed professions listed in Education Law Articles 131- 166 (§§ 6520 - 8708), including social work under Education Law §§ 7701 *et seq.* The State boards for each of the professions listed in Education Law §§ 6520 - 8708 are also State entities. *E.g.*, *Jaghory v. New York State Dept. of Education*, 1996 WestLaw 712668, 95 CV 3478 (FB) (E.D.N.Y. Dec. 5, 1996), *affirmed on other grounds*, 131 F.3d 326 (2d Cir. 1997) (State Board of Medicine, as well as the Regents and SED, are State entities).

[6]  Available on-line at the Second Circuit's official web-site (www.ca2.uscourts.gov).

Ratified in the 1790s, the Eleventh Amendment reads in full as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

As the Supreme Court held in *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991) (citations and quotation marks omitted):

> we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty; and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the plan of the convention.

The Supreme Court recently reiterated these principles in *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193 (2006):

> This Court's cases have recognized that the immunity of States from suit "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U. S. 706, 713 (1999); *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56 (1996); *Principality of Monaco v. Mississippi*, 292 U. S. 313, 322-323 (1934). Consistent with this recognition, which no party asks us to reexamine today, we have observed that the phrase " 'Eleventh Amendment immunity' . . . is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden, supra*, at 713.

Indeed, the Eleventh Amendment bars a federal court from granting any relief – whether legal or equitable – against a State or a State agency. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993), citing *inter alia Cory v. White*, 457 U.S. 85, 90-91 (1982), in which the Supreme Court stated that "[i]t would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is

sought. . . . [T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity." *See also*, *Seminole Tribe of Florida* v. *Florida*, 517 U.S. 44, 58 (1996) ("we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.")

One additional way in which the Eleventh Amendment and sovereign immunity may be applicable to the present action is that these principles deprive this Court of subject matter jurisdiction to grant any relief insofar as plaintiff's claims may be based upon State law. The Supreme Court in *Pennhurst State School & Hospital* v. *Halderman*, 465 U.S. 89, 106 (1984), has foreclosed such claims:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

### B. State Agencies Are Not "Persons" Within The Meaning of 42 U.S.C. § 1983, and Thus Cannot Be Sued Under That Statute

Even without regard to the Eleventh Amendment immunity and sovereign immunity principles discussed above, States and State agencies are not "persons" within the meaning of § 1983, and accordingly, § 1983 cannot be used as a basis to sue them. *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under 1983.")

### C. This Court Is Required To Abstain, Due To The Administrative Proceeding Against The Plaintiff

Where, as here, there is an ongoing State proceeding, an important State interest is

-7-

implicated in that proceeding, and the plaintiff has an adequate opportunity in the State

proceeding for judicial review of her federal claims, the federal courts are generally required to

abstain from exercising jurisdiction over actions that involve or call into question the ongoing

State proceeding. This principle of comity is referred to as "*Younger* abstention." *See*, *Younger*

*v. Harris*, 401 U.S. 37 (1971) (injunctive relief precluded); *Samuels v. Mackell*, 401 U.S. 66, 72

(1971) (declaratory relief also precluded); *Hansel v. Town Court*, 56 F.3d 391, 393-394 (2d

Cir.), *cert. denied*, 516 U.S. 1012 (1995); *Arena v. Dept. of Social Services*, 216 F.Supp.2d 146,

154-155 (E.D.N.Y. 2002) (Spatt, J.). *Younger* abstention is not restricted to instances where the

federal court is asked to interfere with pending State criminal proceedings, but also extends to

State administrative proceedings, such as license revocation proceedings. *See e.g.*, *Ohio Civil*

*Rights Com'n. v. Dayton Christian Schools*, 477 U.S. 617, 627 (1986) (citing cases involving

revocation of medical licenses and licenses to practice law). The Second Circuit has held

(*Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 [2d Cir. 2002]):

> *Younger* abstention is required when three conditions are met: (1) there is an
> ongoing state proceeding; (2) an important state interest is implicated in that
> proceeding; and (3) the state proceeding affords the federal plaintiff an adequate
> opportunity for judicial review of the federal constitutional claims. *Grieve v.*
> *Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001).

Where (as here), such conditions exist, (a) abstention is mandatory; (b) "its application

deprives the federal court of jurisdiction in the matter" (*Diamond "D" Constr. Corp.*, 282 F.3d at

197); and (c) declaratory relief is likewise barred (*Hansel*, 56 F.3d at 393).

Since plaintiff is the party seeking to invoke federal court jurisdiction, the burden is on

her to establish that there is an exception to *Younger* abstention. *Spargo v. New York Com'n. on*

*Judicial Conduct*, 351 F.3d 65, 78 (2d Cir. 2003) ("to avoid abstention, plaintiff must

-8-

demonstrate that state law bars the effective consideration of their constitutional claims. . . .
[U]nder *Younger*, it is the plaintiff's burden to demonstrate that state remedies are inadequate,
and defendants need not establish that state law definitely permits the interposition of
constitutional claims"), *cert. denied*, 541 U.S. 1085 (2004). *See also*, *Kern v. Clark*, 331 F.3d 9,
11-12 (2d Cir. 2003) (exception to *Younger* abstention exists where "prosecution is 'brought in
bad faith *or* is only one of a series of *repeated* prosecutions' ", *quoting Younger*, 401 U.S. at 49
(emphasis added)]); *Diamond "D"*, 282 F.3d at 198. Significantly, plaintiff cannot rely upon
conclusory allegations as the basis for meeting her burden of showing that an exception to the
*Younger* doctrine exists. *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000). Instead, a
plaintiff is required to satisfy a rigorous standard: "for a federal plaintiff to invoke the bad faith
exception, the party bringing the state action must have no reasonable expectation of obtaining a
favorable outcome" (*Diamond "D"*, 282 F.3d at 199 [internal citation omitted]), and even "[a]
state proceeding that is legitimate in its purposes, but unconstitutional in its execution–even
when the violations of constitutional rights are egregious–will not warrant the application of the
bad faith exception" (*Diamond "D"*, 282 F.3d at 199).

Plaintiff cannot meet this heavy burden, since all three elements for abstention are
present. First, at the present time, there is a pending State administrative proceeding. "[W]here
state . . . proceedings are begun against the federal plaintiffs after the federal complaint is filed
but before any proceedings of substance on the merits have taken place in the federal court, the
principles of *Younger v. Harris* should apply in full force." *Hicks v. Miranda*, 422 U.S. 332,
348 (1975). That is precisely the situation here, because the only papers filed by plaintiff in this
action consist of her Complaint, her Amended Complaint, and the receipt for the filing fee.

Thus, it is immaterial that plaintiff commenced this action before the Statement of Charges was issued and served upon her.  Second, just as "it is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one." *Hansel*, 56 F.3d at 393 (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 [1982]), it cannot be contested that the State has a fundamental and important interest in determining who can practice before the public as a licensed social worker in this State. [7]  Third, for *Younger* purposes, it is enough that "a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities." *Hansel*, 56 F.2d at 394 (citations omitted).  The "appropriate inquiry" is "whether the state's procedural remedies *could* provide the relief sought[,] not whether the state *will* provide the constitutional ruling which the plaintiff seeks." *Kaufmann v. Kaye*, 466 F.3d 83, 87 (2d Cir. 2006) (alterations from earlier decisions omitted), *cert. denied*, 555 U.S. –, 127 S.Ct. 1828 (Mar. 19, 2007).  Indeed, plaintiff is free to seek first administrative, and then judicial, review of any adverse Board determination. [8]

---

[7]  This is not the first action in which a plaintiff has asked a federal court to stay a State administrative proceeding, but such requests typically result in a denial of relief on *Younger v. Harris* grounds. For a nonexhaustive list, *see Yoonessi v. New York State Board for Professional Medical Conduct*, 2005 WestLaw 645223, at *18-*20, 03-CV-871S (W.D.N.Y. Mar. 21, 2005), *affirmed* 162 Fed.Appx. 63 (2d Cir. 2006); *Zahl v. Harper*, 282 F.3d 204 (3d Cir. 2002); *Amanatullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160 (10th Cir. 1999); *Zar v. South Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 467 (8th Cir. 1992); *333 East 60th Street, Inc. v. New York State Liquor Authority*, 2008 WestLaw 4104012, 08CV4147 (S.D.N.Y. May 1, 2008).

[8]  Except for summary suspensions, a license revocation does not become effective until administrative proceedings have been finally concluded by the agency. *See* New York State Administrative Procedure Act § 401(2):

> When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing

## D.  Absolute Immunity

To the extent that plaintiff is seeking to sue anyone for damages with respect to either the adjudication or prosecution of the administrative proceeding against her, the doctrine of absolute immunity presents an unsurmountable hurdle.  The doctrine of absolute immunity is that even if a judicial officer or prosecutor acts with the worse possible state of mind, he or she cannot be sued for damages;  plaintiff should not view this as a concession of any impropriety by any defendant.  It is not:  the sole point is that for absolute immunity purposes, state of mind is simply irrelevant. [9]

Absolute judicial immunity is a doctrine older than this country.  *See Pierson v. Ray*, 386 U.S. 547, 553-554 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, . . . [which] applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' ").  It also applies to those persons who perform judicial functions, even they do not hold the title "judge."  *See Applewhite v. Briber*, 506 F.3d 181, 182 (2d Cir. 2007) ("absolute judicial immunity attaches to a state

---

court, provided that this subdivision shall not affect any valid agency action then in effect summarily suspending such license.

[9]  The doctrine applies with equal force to protect those people who either adjudicate, or prosecute, administrative proceedings, as opposed to criminal proceedings. *Butz v. Economou*, 438 U.S. 478, 508-514 (1978) (as to administrative judges); *Id.*, 438 U.S. at 516 as to agency attorneys ("We can see no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court.")

medical review board's disciplinary proceeding where, as here, the individual charged has the right to be represented by counsel, to present evidence and to cross-examine witnesses, and where the board articulates its findings and conclusions in a binding order – as opposed to a mere recommendation – under a preponderance of the evidence standard."), *cert. denied*, 552 U.S. – , 128 S.Ct. 1741 (Mar. 31, 2008).

Within the last month, the Supreme Court has repeated the reasons for absolute prosecutorial immunity (*Van de Kamp v. Goldstein*, 555 U.S. – [Jan. 26, 2009]):

> A half-century ago Chief Judge Learned Hand explained that a prosecutor's absolute immunity reflects "a balance" of "evils." *Gregoire v. Biddle*, 177 F. 2d 579, 581 (CA2 1949). "[I]t has been thought in the end better," he said, "to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Ibid.* In *Imbler, supra*, this Court considered prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Id.*, at 430. And, referring to Chief Judge Hand's views, it held that prosecutors are absolutely immune from liability in §1983 lawsuits brought under such circumstances. *Id.*, at 428.

Finally, with respect to injunctive relief against a person performing an adjudicative function, Congress has, in effect, also provided for absolute immunity. In 1996, it amended 42 U.S.C. § 1983 to add the following: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Neither of these exceptions are applicable here.

### E.    Official Capacity

The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 78 (1989). *See also Hafer v. Melo*, 502 U.S. 21, 26

-12-

(1991) ("[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, to the extent plaintiff is suing defendants Keyes, Ding, or Catone in their official capacities (as well as defendants Executive Secretary of the State Board for Social Work, and the Commissioner and Assistant Commissioner of SED), her claims are deemed to be asserted against the entities or positions they hold. However, such entities and positions cannot be sued for the reasons stated in Point 1 (Eleventh Amendment and sovereign immunity), Point 2 (they are not "persons" within the meaning of § 1983. *Will*, 491 U.S. at 78), Point 3 (*Younger v. Harris* abstention), and Point 4 (absolute immunity for persons performing adjudicatory and prosecutorial functions).

## F. No *respondeat superior*

*Respondeat superior* is the legal doctrine that permits, in certain circumstances, a defendant who is himself factually blameless to be held legally responsible for the wrongful conduct of its employee or agent. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691-695 (1978). *Respondeat superior* is not a viable basis for liability under § 1983; rather, it is only where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." *Monell*, 436 U.S. at 694. This principle provides an independent basis for dismissal.

## G. Plaintiff's Failure To Allege Any Acts By Certain Defendants

"[W]here the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss

-13-

the complaint in regard to that defendant should be granted." *Iwachiw* v. *New York State Dept. of Motor Vehicles*, 299 F.Supp.2d 117, 121 (E.D.N.Y. 2004) (*quoting Dove* v. *Fordham Univ.*, 56 F.Supp.2d 330, 335 [S.D.N.Y.1999]), *affirmed on other grounds*, 396 F.3d 525 (2d Cir. 2005).

Plaintiff's amended complaint does not refer to defendants Ding and Catone. To the extent that dismissal is not required as against them for the reasons stated in prior points, plaintiff's claims against them are deficient for the reasons stated immediately above.

## POSTSCRIPT

Unlike most *pro se* plaintiffs – who are unfamiliar with the legal doctrines described above – the plaintiff in this action is already on notice of them, as a result of an earlier action that she brought in this Court (*Jones-Soderman* v. *McVeigh, et al.*, CV 08-1500 [E.D.N.Y.], which was transferred in April 2008 to the United States District Court for the District of New Jersey (CV 08-1887 [D.N.J.]). Plaintiff's earlier action arises from the revocation of her New Jersey social worker license (discussed above). The filings in that action are a matter of public record, and reflect that in October 2008, the New Jersey Attorney General (on behalf of a number of defendants in that action) filed a motion to dismiss, relying upon *Younger* v. *Harris* abstention, Eleventh Amendment immunity, and judicial and prosecutorial absolute immunity (and other grounds) that the defendants in the instant action have also asserted. The motion to dismiss the New Jersey action appears to be fully briefed, and remains pending.

NEW YORK STATE EDUCATION DEPARTMENT
OFFICE OF PROFESSIONAL DISCIPLINE
STATE BOARD FOR SOCIAL WORK
--------------------------------------------X

IN THE MATTER

of the

Disciplinary Proceeding

against

JILL G. JONES-SODERMAN

who is currently licensed to practice as
a(n) licensed clinical social worker
(formerly certified social worker) in the
State of New York.
--------------------------------------------X

STATEMENT
OF
CHARGES

CAL. NO. 23157

THE NEW YORK STATE EDUCATION DEPARTMENT BY ITS DIVISION OF
PROSECUTION OF THE OFFICE OF PROFESSIONAL DISCIPLINE ALLEGES AS
FOLLOWS:

JILL G. JONES-SODERMAN, hereinafter referred to as the
Respondent, was issued license No. 013488 on or about November 21,
1972 by the New York State Education Department authorizing
Respondent to practice as a certified social worker (now licensed
clinical social worker) in the State of New York.

Respondent is currently registered with the New York State
Education Department to practice as a licensed clinical social
worker in the State of New York from an address at: 10 Cornelison
Avenue, Nyack, New York 10960.

### FIRST SPECIFICATION OF PROFESSIONAL MISCONDUCT

Respondent is charged with committing unprofessional conduct
within the purview and meaning of New York State Education Law §
6509(9), in specific violation of 8 NYCRR 29.1(b)(6) (willfully
making or filing a false report), in that:

A.    In or about December 2003, Respondent willfully filed
with the Division of Professional Licensing Services, New York
State Education Department, a registration renewal document for
the period May 1, 2004 to April 30, 2007 for her license to
practice the profession of social work in the State of New York in
which she answered "No" to question 2(b): "Since your last
registration application, has any licensing or disciplinary
authority revoked, annulled, cancelled, accepted surrender of,
suspensed, placed on probation, or refused to issue or renew a
professional license or certificate held by you now or previously,
or fined, censured, reprimanded or otherwise disciplined you?",
and certified under the penalty of perjury that since her last
registration renewal she had not been disciplined by any licensing
or disciplinary authority.

B.    In truth and in fact, and as Respondent well knew, on
or about July 10, 2003, Respondent executed a Consent Order with
the New Jersey State Board of Social Work Examiners in which her
license to practice social work in the State of New Jersey was
suspended for five years, effective July 24, 2003, she was
reprimanded for her unprofessional conduct under New Jersey law
and assessed a civil penalty of seven thousand, five hundred
dollars ($7,500.00).

### SECOND SPECIFICATION OF PROFESSIONAL MISCONDUCT

Respondent is charged with having been found guilty of
improper professional practice or professional misconduct by a
duly authorized professional disciplinary agency of another state

2

where the conduct upon which the finding was based would, if committed in New York State, constitute professional misconduct under the laws of New York State, within the purview and meaning of the New York State Education Law § 6509(5)(b), in that:

A.  On or about May 5, 2005, a Notice of Hearing and Complaint was served upon Respondent by the Arizona State Board of Behavorial Health Examiners based upon, <u>inter alia</u>, the following allegations:

On or about April 4, 2004, Respondent submitted an Application to the Board for certification as a clinical social worker. Contrary to the Application's requirements, Respondent failed to inform the Board that she held or had held a social worker license from the State of New Jersey. With respect to that license, Respondent also failed to inform the Board that while she was practicing as a license social worker in New Jersey, she had discipline imposed against her license twice for unprofessional conduct, including for practicing on a suspended license. As a result of those actions, Respondent is permanently enjoined and restrained from offering or engaging in social work, counseling and/or therapy services in the State of New Jersey, and from using the abbreviations and designations of "SW," "LCSE," "LSW," "CSW," "SWT,"

2

"Ph.D.," "Doctor," "Dr.," or similar abbreviations, or
the description "psychiatric social worker" or social
worker."

Contrary to the Application's requirements,
Respondent failed to notify the Board that she had been
a defendant in a malpractice action.

The conduct and circumstances described in
paragraphs 3 and 4 constitute violations of A.R.S. §
32-3251(10)(b), the use of fraud or deceit in
connection with establishing qualifications for
certification as a behavioral health professional.

B.    On or about June 27, 2005, an Administrative Law Judge
issued a decision in which he found as follows:

### FINDINGS OF FACT

1.    Respondent Jill Jones Soderman is the holder of
License No. LCSW-11621 issued by the Arizona State
Board of Behavioral Health Examiners ("Board") for the
practice of licensed clinical social work in the State
of Arizona.    Respondent is also licensed as a social
worker in the State of New York.

2.    On or about April 14, 2005, the Board issued
Findings of Public Emergency and Order of Summary
Suspension in Case No. 2005-0103. The Board concluded
that Respondent used fraud or deceit in connection with
establishing her qualifications for certification as a

4

behavioral health professional, in violation of A.R.S.
§ 32-3251(10)(b).    The Board found that the public
health, welfare and safety required emergency action
and ordered that Respondent's license be summarily
suspended effective upon service of the Order.

3.    On or about May 5, 2005, the Board, through its
Executive Director, issued a Notice of Hearing and
Complaint in this matter.    The case was scheduled for
hearing on June 7, 2005, before the Office of
Administrative Hearings, an independent agency.

4.    On or about April 4, 2004, Respondent submitted an
application to the Board for certification as a
clinical social worker.

5.    In her application for certification, Respondent
answered "No" to question number 2, which reads:

> Have you ever been or are you currently the
> subject of any complaint, investigation or
> disciplinary action against your license,
> certificate, registration or membership by
> any state regulatory board, any professional
> or occupational credentialing authority or
> any professional association in Arizona or
> any other state or country.    If yes, please
> provide copies of the complaint and all final
> actions.    **You must identify all complaints
> ever filed against you, pending or completed,**

5

> other than those filed by this Board, and
> attach an explanation.  For example, even if
> a complaint against you was dismissed as
> unsubstantiated or unfounded, you must answer
> "yes" and include an explanation.  (Emphasis
> in the original).

6.   In her application for certification, Respondent
answered "No" to question number 5, which reads:

> Have you ever voluntarily surrendered,
> allowed to lapse, canceled or resigned your
> license, certificate, registration or
> membership in lieu of disciplinary
> proceedings or sanctions of any kind by any
> state regulatory board, any professional or
> occupational credentialing authority or any
> professional association in Arizona or any
> other state or country.

. . . .

8.   In PART XI[,] <u>Certifying Statement</u> of her
application, Respondent made the following
certification:

> I certify under penalty of perjury that all
> information contained in my application,
> including all supporting documents, is true
> and correct to the best of my knowledge and
> belief and with full knowledge that all

6

statements made in this certification may be
grounds for refusal, subsequent revocation or
suspension of my certificate(s), or other
disciplinary action.

9.   Based upon the information provided by Respondent
in her application, the Board granted her certification
as a social worker. Respondent was subsequently
grandfather into licensure.

10.  Contrary to the application's requirements,
Respondent failed to inform the Board that she held or
had held a social worker license from the State of New
Jersey. With respect to that license, Respondent also
failed to inform the Board that while she was
practicing as a licensed social worker in New Jersey,
she had discipline imposed against her license twice
for unprofessional conduct, including for practicing on
a suspended license.

11.  On or about January 7, 2004, the Superior Court of
New Jersey, Chancery Division-Sussex County, issued a
Consent Order in Docket No. SSXC-56-03 in which
Respondent was the named Defendant.  In that Consent
Order, the Court ordered, among other things, that
Respondent be "permanently enjoined and restrained from
offering or engaging in social work, counseling and/or
therapy services in the State of New Jersey including
but not limited to performing mental health evaluations

7

and from using the abbreviations 'SW,' 'LCSW,' 'LSW,' 'CSW,' 'SWT,' 'Ph.D.,' 'Doctor,' 'Dr.' or similar abbreviations and/or the description psychiatric social worker or social worker or any similar description in the State of New Jersey unless and until duly authorized by the New Jersey State Board of Social Work Examiners to do so."

12. The Court also ordered that Respondent be "permanently enjoined and restrained from offering or engaging in any unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation and from using the above-described titles and abbreviations.

13. In the Consent Order, the Court found that Respondent had engaged in at least four separate occasions in the unlicensed practice of social work, counseling and/or therapy and that such conduct constituted "the use or employment of misrepresentations."

14. Respondent is found to have been deceitful in the answers to questions number 2 and 5. Respondent's contention that those answers were inadvertently given due to the paperwork being prepared by others is not credible. Respondent is the responsible party for the accuracy and completeness of her application. She certified that her application was accurate with the

8

knowledge that she had the prior two disciplinary actions in New Jersey.

15. In Respondent's Registration Renewal Document for the renewal of her New York social worker license for the period covering from May 1, 2004 to April 30, 2007, answered "No" to question 2b., which reads: "Has any licensing or disciplinary authority revoked, annulled, cancelled, accepted surrender of, suspended, placed on probation, or refused to issue or renew a professional license or certificate held by you now or previously, or fined, censured, reprimanded or otherwise disciplined you?" Respondent signed a certification in the application that the contents were true and correct, and that she knew the consequences for any misrepresentation or false or misleading information. Respondent did not disclose the first New Jersey disciplinary Consent Order dated July 10, 2003, which, among other things, suspended her New Jersey social worker license for five years.

16. Subsequent to the Board's Summary Suspension of Respondent's license, it received on May 2, 2005 a copy of Respondent's Texas application for social work licensure dated March 3, 2004. In that application Respondent answered "No" to question number 2, which reads: "Have you ever been found guilty of unprofessional or unethical conduct in a civil or

9

administrative proceeding?" Respondent failed to disclose her two New Jersey Consent Orders which disciplined her New Jersey license.

17. Respondent has a consistent pattern of failing to disclose the prior disciplinary actions taken against her New Jersey license.

. . . .

19. Based upon the evidence of record, Respondent's practice as a licensed clinical social worker in Arizona is a threat to the public health, safety and welfare. Respondent is found to be unregulatable.

<u>CONCLUSIONS OF LAW</u>

1. The Board has jurisdiction over Respondent and the subject matter in this case.

2. Pursuant to A.R.S. § 41-1092.07(G)(2), the Board has the burden of proof in this matter. The standard of proof is a preponderance of the evidence. It is concluded that the Board sustained its burden of proof in this case.

3. The conduct and circumstances described in the above Findings of Fact constitute unprofessional conduct by Respondent in violation of A.R.S. § 32-3251(1)(b)*

---

* This citation was the statute in affect [sic] at the time of Respondent's application. The present citation is A.R.S. 32-3251(12)(b).

10

4.   Respondent's   above-described   unprofessional
conduct justified the Board's Summary Suspension of her
license in order to protect the public health, safety
and welfare as permitted by A.R.S. § 41-1092.11.  That
Summary Suspension should remain in full force and
effect until there is an effective Order entered in
this matter.

5.   Respondent's   above-described   unprofessional
conduct warrants the revocation of her license pursuant
to A.R.S. § 32-3281(M) in order to protect the public
health, safety and welfare.

6.   Pursuant to A.R.S. § 32-3281(M), Respondent should
be  assessed  all  costs  incurred  for  the  Board's
investigation and the formal hearing.

### RECOMMENDED ORDER

In view of the foregoing, it is recommended that
the Board's Summary Suspension of Respondent's License
No. LCSW-11621 remain in full force and effect until
the effective date of the entered Order in this matter.

It   is   further   recommended   that   Respondent's
License No. LCSW-11621 be revoked on the effective date
of the entered Order in this matter.

It   is   further   recommended   that   Respondent   be
assessed   the   costs   incurred   in   the   Board's
investigation in this matter and the formal hearing.
Such costs shall be paid by Respondent within 60 days

11

of the date of invoice issued by the Board, unless that
deadline is extended by the Board.

C.  On or about July 13, 2005, the Arizona Board of
Behaviorial Health Examiners issued an Order of Revocation in which
it ruled as follows:

On July 8, 2005, the Arizona Board of Behavioral
Health Examiners ("Board") held a hearing in the above-
referenced matter to consider the Recommended Decision
of Administrative Law Judge Brian Brendan Tully dated
June 27, 2005, and received by the Board on June 28,
2005.  The Administrative Law Judge's Decision is
attached hereto and incorporated herein by this
reference.  The Respondent was properly noticed and
appeared with legal counsel, Jill M. Covington.  The
matter was prosecuted by Assistant Attorney General
Marc  H.  Harris  and  the  Board  was  represented
independently by Assistant Attorney General Victoria
Mangiapane of the Solicitor General's Office.

After having considered all of the testimony and
evidence,  the  Board  voted  to  adopt  in  full  the
recommended Findings of Fact 1 through 19 (with a
modification to Finding 49 to substitute "license" for
"certification" and to delete the second sentence), as

12

presented by the Administrative Law Judge in the attached recommended decision in order to conform to the evidence.

For its Conclusions of Law, the Board voted to adopt in full the recommended Conclusions of Law 1 through 6 (with a modification to Conclusion #3 to correct a typographical error in the violation cited to read "A.R.S. § 32-3251(10)(b))," as presented by the Administrative Law Judge in the attached recommended decision.

For its Order, the Board hereby adopts the recommended decision to revoke licensed clinical social worker license No. LCSW-11621 issued to Respondent, effective on the date the Order is entered in this matter and that Respondent be assessed the Board's investigation and formal hearing costs in this matter. Such costs shall be paid by Respondent within 60 days of the date of invoice issued by the Board.

<div align="center">ORDER</div>

Based on the foregoing, IT IS ORDERED that Respondent's licensed clinical social worker license No. LCSW-11621 is hereby revoked effective immediately.

D. The conduct upon which the aforesaid Order of Revocation was based would, if committed in New York State, constitute professional misconduct within the purview and meaning

<div align="center">13</div>

of New York State Education Law § 6509(1) (obtaining the license
fraudulently).

    **WHEREFORE,** it is requested that a disciplinary penalty be
exacted upon Respondent and upon the license and registration
previously granted to Respondent to practice as a licensed
clinical social worker in New York State.

Dated:     /6ᵗʰ  day of December, 2008


                   LOUIS J. CATONE
                   PROFESSIONAL CONDUCT OFFICER


                   GEORGE M. DING
                   DIRECTOR OF PROSECUTIONS


By:       _____
          WAYNE L. KEYES
          Prosecuting Attorney
          Office of Professional Discipline
          N.Y.S. Education Department
          475 Park Avenue South -- 2nd Floor
          New York, New York  10016-6908
          (212) 951-6401

WLK:sql-g

14

# AFFIRMATION OF SERVICE

Ralph Pernick affirms under penalty of perjury that the following is true and correct, pursuant to CPLR § 2106:

1.      I am an attorney duly admitted to practice law before the courts of the State of New York, an Assistant Attorney General of the State of New York, am over 21 years old, and am not a party to this action.

2.      On February 17, 2009, I served a true copy of the attached Notice of Motion upon the *pro se* plaintiff by:

√      placing a true copy of same in a facility maintained by the United States Postal Service within the State of New York, in a properly-addressed postpaid envelope addressed to:

> Ms. Jill Jones-Soderman
> 10 Cornelison Avenue
> Nyack, NY   10960-4644

√      and by e-mailing a true copy in PDF format of the Notice of Motion and supporting memorandum of law to the *pro se* plaintiff, to Jill@TheOpenMind.us.


Ralph Pernick

Dated:  February 17, 2009